FILED

MAY - 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

EDWARD E. FORD #11231-057
            Movant
USP-Big Sandy
P.O. Box 2068
Inez, KY 41224
            v.

HECTOR RIOS,
            Respondent.
Warden-USP-Big Sandy
P.O. Box 2068
Inez, KY 41224

:
:
:
:
:
:
:
:
:
:

Case: 1:07-cv-00805
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 5/2/2007
Description: HABEAS CORPUS

MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

PURSUANT TO 28 U.S.C. §2241

The Movant, Edward E. Ford, pro se, respectfully petitions

this Honorable Court to vacate, or set aside, the convictions and

sentences herein, pursuant to 28 U.S.C. §2241, and in support

thereof submits the below:


I.    JURISDICTION


The court has jurisdiction to entertain this motion pursuant

to 28 U.S.C. §2241, and D.C. Code 16-1901(b).  D.C. Code 16-1901(b)

sets out:

>    "(b) Petitions for writs directed to Federal Officers and
>    employees shall be filed in the United States    District
>    Court For The District of Columbia."  D.C. Code 16-1901(b).

The movant is in Federal custody and the proper Respondent

is the Warden of the Federal prison that confines the movant.  Ad-

ditionally, the movant has previously exhausted remedies in the D.C. Superior Court by filing and having denied, without a hearing, a new trial motion pursuant to 23 D.C. Code §23-110. A writ of Habeas corpus, pursuant to 28 U.S.C. §2241, may be granted by a District Court if the prisoner is in custody under or by color of the authority of the United States, and that custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. 2241(c)(1) (3).

A prisoner of the District of Columbia is treated differently than a state prisoner for purposes of obtaining habeas corpus review. A prisoner of the District of Columbia must first bring a post - conviction claim before the District of Columbia court that imposed sentence. See D.C. Code Ann. §23-110(g)(1981). A D.C. Prisoner has no recourse to a Federal habeas court unless the local remedy is inadequate or ineffective to test the legality of detention. See, Swain v. Pressley, 430 U.S. 372,378(1977)(because Congress created post-conviction remedy in D.C. Sentencing Court, habeas petition may not be entertain elsewhere); cf. Neal v. Dir. D.C. Dept. of Corr., 684 F.2d 17,20 (D.C. Cir. 1982)(per curiam)(transferring prisoner out of D.C. did not deprive D.C. Circuit of Jurisdiction over petition's habeas corpus claim).

The case at bar presents such a factual scenario where access to the Federal habeas court is warranted. The movant is entitled to file a petition for a writ of habeas corpus pursuant to D.C. Code § 16-1901. The statute sets forth in section (b) that the writ should be filed in the U.S. District Court For The District of Columbia,

when directed at Federal Officials.  The warden of the prison of confinement is the proper respondent, and she is a federal official.

Additionallly, 23 D.C. Code §23-110, is inadequate, in this case to test the legality of the confinement, due to movant having filed a prior motion thereunder which presented colorable claims, including ineffective assistance of counsel, which were dismissed without a hearing.  Although inartfully drafted, the court was ob-ligated to liberally construe the motion, and should have held a hearing to determine if matters outside of the record supported mo-vant's claims concerning counsel's ineffectiveness.  In the interest of justice, this court should entertain the instant motion.

## II.   PROCEDURAL HISTORY

1.)  On a trial which began on March 11, 1997, a mistrial was declared when the jury deadlocked on March 20, 1997.

2.)  A second trial commenced on December 8, 1997, and conclud-ed with convictions for Murder in the First Degree, Possession of a Firearm During a Crime of Violence or Dangerous Crime, and Carrying a Pistol without a License.

3.)  On February 20, 1998, Movant was sentenced to thirty (30) years to Life on the offense of Murder in the First Degree while Armed, five (5) to fifteen (15) years for Possession of a Firearm During a Crime of Violence or Dangerous Crime, and one (1) year for Carrying a Pistol without a License, with all sentences to run consecutively.

4.)  On March 18, 1998, a timely notice of appeal was filed

on Movant's behalf.

5.)  In April of 1998, the movant forwarded a <u>pro se</u> new trial motion, pursuant to 23 D.C. Code §23-110, to the trial judge, the Hon. Harold L. Cushenberry.

6.)  On January 7, 2000, Judge Cushenberry denied the §23-110 motion, without a hearing.

7.)  On May 18, 2000, the D.C. Court of Appeals consolidated the denial of the §23-110 motion (App. No. 98-CO-388), with the appeal of the convictions (App. No. 98-CF-471).

8.)  In an opinion of March 14, 2002, the D.C. Court of Appeals affirmed the Movant's convictions and sentences.

9.)  On or about Apr. 98, Movant filed a <u>pro se</u>, motion for a new trial, on the ground of Actual Innocence, pursuant to D.C. Code §22-4135(a)(b)(d)(1).

III. <u>SUMMARY OF ARGUMENT</u>

The movant was convicted of First Degree Murder and Possession of a Firearm During a Crime of Violence or Dangerous Crime and Carrying a Pistol without a License, in a second trial.  The court erred in excluding the testimony of a police officer, Officer Kager, who would have testified that a third person, the decedent's ex-boyfriend, Jerome Tolbert, had threatened to kill the decedent.  Despite acknowleding movant's right under D.C. Court of Appeals caselaw to present

4.

the defense, the trial court excluded the testimony on hearsay grounds. The trial Court erred in allowing in evidence the testimony of movant's niece that she had seen movant with a gun - once four days and one approximately six months before the shooting. There was no murder weapon recovered in the case, and the witness could not positively identify a gun from seven samples shown at trial.

The prosecutor committed multiple instances of prosecutorial misconduct during closing and rebuttal closing argument. The D.C. Court of Appeals concurred that the prosecutor had gone too far, however the court, nonetheless, affirmed the convictions. Movant submits that these indiscretions alone warrant a new trial, in the interest of Justice.

The trial court erred in denying movant's new trial motion pursuant to D.C. Code §23-110, without a hearing. In a case that ended in a hung jury in the first trial, and a new attorney in the second trial, matters outside the record supported the grant of the new trial motion. The movant's 23-110 motion was inartfully drafted, however the court should have liberally construed the motion to allege valid claims.

Finally, the new trial motion on the ground of actual innocence was inartfully drafted also, and failed to allege any newly-discovered evidence, which is one of the prerequsites for the granting of the motion.

## IV.    IMPROPER EXCLUSION OF
### EVIDENCE ON HEARSAY GROUNDS

The trial court decided that the evidence that Jerome Tolbert had threatened to beat and kill the decedent, Stephanie Gauze, was admissible under the rulings of <u>Winfield v. United States</u>, 669 A2d 1275(1996). However, the trial court excluded the testimony that would have been provided by Officer Kager on hearsay grounds.  The court decided this was not an excited utterance because Ms. Gauze had only said that Tolbert had threatened to beat her up, on the 911 tape which was admitted at the trial.  Ms. Gauze told officer Kager ten minutes later that Tolbert had threatened to kill her also, when Kager came to take the police report.  The court concluded that the statement was not admissible under the the residual exception of the Federal Rules of Evidence (tr. 3/17/97, page 228, line 16-page 256, line 11; 3/18/97, page 266, line 19-page, line 13; 12/8/97, page 3, line 2 - page 6, line 7 and page 11, line 14 - page 18, line 15).

The Sixth Amendment of the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right... to have compulsory process for obtaining witnesses in his favor." U.S. Constitution Amendment VI.  Through the Fourteenth Amendment in <u>Washington v. Texas</u>, 388 U.S. 14,19(1967).  A violation of the Compulsory Process Clause is subject to harmless error analysis and must be shown to be harmless beyond a reasonable doubt to not have contributed to the verdict.  A State[1] cannot rigidly apply otherwise

---

footnote[1]

Although the District of Columbia is not a State, the Superior Court of the District of Columbia is considered in the same capacity.

valid rules in their application to a specific case would abridge
the defendant's compulsory process rights.  In the case at bar, this
error took place, by the Court using Exclusionary Rules to justify
keeping from the jury that the third party had threatened to kill
the decedent.  The error is especially egregious in a case where
the defendant was just meeting the decedent for the first time and
the alleged motive for the killing was that the decedent had "dissed",
the defendant; the third party:  (1)  Had been in love with and en-
gaged to marry the decedent; (2) the decedent came from New York to
the District of Columbia with the third party and then dumped them
after all the drugs and money were gone for another man; (3) the
decedent called the police and had the third party arrested, along
with a stay away order being issued; (4) during the period of incar-
ceration, loss their living quarters and employment; (5) was aware
that the decedent was exchanging sexual favors to give money and drugs
to Tolbert's life-long friend, Kenny, at whose house the murder took
place; and (6) on the night of the murder Tolbert's nephew had taken
the decedent in Wilson's bathroom in order to engage in sex for money
that Wilson owed to the nephew, Sean McIntosh.

In <u>Chambers v. Mississippi</u>, 410 U.S. 284, 93 S. Ct. 1038, 35
L. Ed. 2d 297(1973), the Court addressed local evidentiary rules
which serve to thwart a defendant's right to mount a defense and to

---

cont'd footnote

(See: Section I, <u>supra</u>).

a fundamentally fair trial. In <u>Chambers</u>, the defendant was denied

an opportunity to fully cross examine a government witness who had

confessed, then recanted, to the shooting of an officer, and was

denied the opportunity to introduce the substance of and circumstances

surrounding the confession on hearsay grounds. In reversing the

lower court for failing to admit the defendant's proffered evidence,

the court noted,

> Few rights are more fundamental than that of an accused  to
> present witnesses in his own defense. e.g., <u>Webb v. Texas</u>,
> 409 U.S. 95(1972); <u>Washington v. Texas</u>, 388 U.S. 14,    19
> (1967); <u>In Re Oliver</u>, 333 U.S. 257(1948).  In the  exercise
> of right, the accused, as is required of the State,    must
> comply with established rules of procedure and evidence de-
> signed to assure both fairness and reliability in the    as-
> certainment of guilt and innocence.  Although perhaps    no
> rule of evidence has been more respected or frequently app-
> lied in jury trials than that applicable to exclusion    of
> hearsay, exceptions tailored to allow the introduction    of
> evidence which in fact is likely to be trustworthy     have
> long existed.  The testimony rejuected by the trial    court
> here bore persuasive assurances of trustworthiness and thus
> was well within the basic rationale of the exception    for
> declarations against interest.  That testimony also    was
> critical to Chamber's defense.  In these circumstances, wh-
> ere constitutional rights directly affecting the ascertain-
> ment of guilt are implicated, **the hearsay rule may not    be
> applied mechanistically to defeat the ends of**    justice.
> <u>Chamber</u>, <u>supra</u>. (emphasis supplied).

These issues were revisted by the court in <u>Green v. Georgia</u>,

442 U.S. 95, 99 S. Ct. 2150, 60 L. Ed. 2d 738(1979). In reaffirming

<u>Chambers</u>, the court held unconstitutional as violative of due process

the notion that a third party confession could be excluded from a

death penalty sentencing phase for Defendant Green on hearsay grounds,

while at the same time the trial court utilized the same hearsay state-

ment in seeking and receiving a death sentence against the co-defen-

dant, Moore.  The Court noted that the hearsay statement was of suf-
ficient import and reliability that the state used it as part of
its own action against the defendant.

In the case at bar, the trial court should have admitted Of-
fier Kager's testimony that Stephanie Gauze told him that Tolbert
threatened to kill her for the same reasons cited by the Court in
Green, supra.  The same prosecutorial office, through the United
States Attorney For The District of Columbia, saw fit to use Stephanie
Gauze's statements as a basis to arrest Tolbert and charge him with
making threats against her.  Further, as part of the arraignment and
bonding process, that same office sought and received a Stay Away
Order to prevent Tolbert from contacting Gauze on the basis of those
statements.  It is inconsistent for the same office which sought to
vouch for the reliability of Gauze's statement in its prosecution
of Tolbert for threats then to suggest that this ame statment is in-
herently unreliable and warrants exclusion when it's admission is
sought by the movant.  Doing so flies in the face of both Green and

Chambers, and the trial court erred in allowing the ends of justice
to be defeated in this way.

The trial court correctly analyzed this evidence and stood
the defense in the shoes of the prosecutor in the analysis of whether,
and to what extent, to admit Gauze's statement to Officer Kager that
Tolbert threatened to kill her.  This analysis notwithstanding, the
trial court then incorrectly refused to admit this statement, either
as a residual hearsay exception with sufficient indicia or reliability,

9.

or as a non-hearsay statement offered to prove the intent, state of
mind, motive or absence of mista e as between the declarant, Gauze,
and Tolbert, the person then standing in the shoes of the defendant.
Under the analysis of <u>Gezmo v. United States</u>, 375 A2d 520,522(D.C.
1977), and consistently with today's special treatment of matters
within the domestic Violence Section of the Superior Court of the
District of Columbia, in cases of marital or domestic homicide any
fact or circumstance relating to ill feelings between parties is
relevant to show motive and malice, and not necessarily as proof
of the truth of the words themselves.

To deny admissibility of the proffered statements amounted
to denial of movant's right to mount a complete defense and to fully
confront and cross examine the witnesses against him, thereby denying
his rights under the Sixth and Fourteenth Amendments to the Constitu-
tion of the United States. <u>Crane v. Kentucky</u>, 476 U.S. 683,690(1986);
<u>Dowthitt v. Johnson</u>, 230 F. 3d 733(5th Cir. 2000)(suppression of
evidence material to guilt or punishment violates defendant's funda-
mental due process rights).


V.    THE TRIAL COURT ERRED IN ADMITTING
OTHER CRIMES EVIDENCE THAT THE MOVANT
CARRIED A PISTOL ON OCCASIONS PRIOR
<u>TO THE DATE OF THE OFFENSE</u>


The trial court erroneously allowed the government to intro-
duce evidence of other crimes, specifically that the movant possessed
a gun on two occasions prior to the shooting, pursuant to the holdings

of Drew v. United States, 118 U.S. App. D.C. 11, 331 F. 2d 85(1984) and Johnson v. United States, 683 A2d 1087(D.C. 1996). However, prior to admission, the government failed to prove that the prior gun testimony was logically relevant to prove some component at issue in the case beyond the power of this testimony to demonstrate criminal propensity. Roper v. United States, 564 A2d 726,731(D.C. 1989).

Other crimes evidence is presumptively prejudicial and inadmissible. Thompson v. United States, 546 A2d 414,418-20(D.C. 1988); Wheeler v. United States, 470 A2d 761,769(D.C. 1983); Willeher v. United States, 408 A2d 67,75(D.C. 1979.

> "It is well established that evidence of one crime is generally inadmissible to prove the defendant's bad character, criminal temperament, or propensity toward criminal behavior." Easton v. United States, 533 A2d 904,906(D.C. 1987).

The testimony concerning the prior possession of guns was not directed at a contested isssue in the case. The defense was mistaken identity and the mode of the murder was uncontested.

> "It is fundamental to a system of criminal justice based upon a presumption of innocence that the process of adjudication must be insolated from the unrelated character traits and past conduct of the accused." Harris v. United States, 366 A2d 461,463(D.C. 1976).

Stated another way, the jury must not be permitted to cumulate the evidence of various crimes and find guilt based on evidence of

the defendant's bad character or propensity to commit crimes.
(Azam) Ali v. United Staes, 520 A2d 306,310 n.3(D.C. 1987). Unless
the evidence can be admitted for some substantial, legitimate, pur-
pose, courts presume prejudice and exclude such evidence.  Drew,
supra, is considered the seminal "other crimes" case, in the D.C.
Court of Appeals.  Drew, recognized Five "legitimate" issues for
which other crimes may be introduced:

> "(1) Motive, (2) intent, (3) absence of mistake or accident,
> (4) a common scheme or plan, or (5) identity." [2]

It bears notice that the evidence concerning the gun posses-
sion was not admitted at the first trial, in this case, and the jury
was unable to convict.  The Court erred and the convictions should
be vacated and a new trial ordered.

---

[2]

Compare Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or
acts is not admissible to prove the character of a person in  order
to show action in conformity therewith.  It may, however, be admis-
sible for other purposes, such as proof of motive, opportunity, in-
tent, preparation, plan, knowledge, identity or absence of  mistake
or accident").  Rule 404(b) is an "inclusionary rule," allowing use
of other crimes evidence except when it tends to prove only crimin-
al disposition.  The District of Columbia, like most other  juris-
diction, has an exclusionary rule under which the government  has
the burden of showing that the evidence falls within one or more of
the recognized exceptions.  Federal cases are distinguishable   in
that they follow a more permissive approach.  J. Weinstein,  Evi-
dence, §404(08), at 404-53(1986).

12.

VI.  PROSECUTORIAL MISCONDUCT DURING
CLOSING AND REBUTTAL CLOSING ARGUMENT
CAUSED SUBSTANTIAL PREJUDICE TO THE
MOVANT, REQUIRING REVERSAL

The prosecutor violated the tenets of the American Bar Asso-

ciation (ABA) Criminal Justice Section Standards of Conduct in the

Prosecution Function, Part I, Standards 3-1.1(c), "the duty of the

prosecutor is to seek justice, not merely to convict."  See also:

United States v. Doe, 860 F. 2d 488(1st Cir. 1988)

> ("Prosecutor does not represent an entity whose interests
> include winning at all costs; prosecutor's client is  so-
> ciety, which seeks justice not victory."); Donnelly   .v.

DeChristofona, 416 U.S. 637,648-49, 40 L. Ed. 2d 431,440, 94 S. Ct.

1868(1974)("the function of the prosecutor under the Federal Consti-

tution is not to tack as many skins of victims as possible to the

wall.  His function is to vindicate the right of people as expressed

in the laws and give those accused of a crime a fair trial."); and

Jencks v. United States, 353 U.S. 657, 1 L. Ed. 2d 1103, 77 S. Ct.

1007(1957)("the interest of the United States in a criminal prosecu-

tion is not that it shall win the case, but that justice will be

done.").

The courts have deemed it misconduct for a prosecutor to com-

ment on the veracity of witnesses during closing argument.  In

Mitchell v. United States, 569 A2d 177(D.C.), cert. denied, 498 U.S.

986(1990), the prosecutor overstepped the bounds of permissible ar-

gument in portraying a government witness as a "truthtelling indivi-

13.

dual". This point was reiterated in Scott v. United States, 619 A2d 917,927(D.C. 1993), where the court found that it was error for the prosecutor to suggest to the jury that his witness was "open and up front and honest when he testified in this case as to those things that had been transgressions in his life."

The prosecutor in this case, Kenneth Kohl, Esq., committed multiple instances of prosecutorial misconduct during closing and rebuttal closing argument. Kohl was the prosecutor in the first trial, and was well-aware that a jury had deadlocked therein. Against this backdrop Kohl repeatedly crossed the line in arguing the case for the government. He commented on the hoesty and forthrightness of the the government witnesses:

(1) He vouched for Tolbert, and demeaned the movant,    and argued outside of the evidence, telling the jury, that's why the defendant's voice is no[t] on the 911    call. 'Cause murderers don't call the police..." (Tr.  12/15/ 97, page 147, lines 1-2), and he went on to    describe Tolbert as a distraught, and honest witness, telling the jury, "those tears you saw [from Tolbert] on the witness stand were real." (Tr. 12/15/97, page 147, lines, 4-5).

(2) He described Tolbert's testimony as being "not of a  killer, but of an honest witness. (Tr. 12/15/97, page  182, lines 3-4).

(3) He vouched for the testimony of Sheila Briggs,   stating, [s]he's not stupid," (Tr. 12/15/97, page 182, line   10). "She knows it['s] a little bit difficult to  understand." (Tr. 12/15/97, page 182, lines 10-12).[3]  But, "if  she

---

3

Although the movant was meeting the decedent and many others in  the apartment for the first time, on the night of the murder, Briggs had

would have left that out." Tr. 12/15/97, page  182,
line 25).

(4)  He vouched for the credibility of his witnesses gen-
     erally, admonishing the jury that if the  witnesses
     were going to frame somebody, "[t]hey'd be  playing
     themselves off as angels." (Tr. 12/15/97, page 180,
     lines 7-8).

Prosecutor Kohl mocked the defense theory that government
witnesses blamed the movant to protect Tolbert. (Tr. 12/15/97, page
146, lines 16-22), punctuating his personal opinion with, "yeah,
that's real smart." (Tr. 12/15/97, page 146, line 22).

When discussing a witness for the defense, Kevin Honesty,
Attorney Kohl became snide  with the jury over the defense theory,
telling them, "Gosh, the conspiracy all of a sudden started to break
down.... Some conspiracy that is." (Tr. 12/15/97, page 147, lines,
5-6, 18).  The prosecutor continued with, "[t]hat's going to be our
story.  We're going to blame this on the guy who just came in there
for five minutes.  That's going to really fly." (Tr. 12/15/97, page
149, lines 1-3).  The prosecutor made sarcastice commentary on
Honesty's character by telling the jury, "Boy, he struck you as an
honest person, didn't he?" (Tr. 12/15/97, page 183, lines 7-8).
"Here he is locked up on his own murder beef, he is trying to solve
other murders while he's locked up." (Tr. 12/15/97, page 183, lines
22-23).

_____

cont'd 3

testified that the shooter made statements about the decedent spen-
ing all of Tolbert's money on drugs and that the decedent was noth-
ing in New York and she was still nothing in D.C.

The prosecutor argued his personal opinion of the evidence, telling the jury that it was "not a close case" (Tr. 12/15/97, page 142, line 2). He went on to intentionally misstate and overstate the evidence, telling the jury that Fleming, the movant's niece, corroborated that movant committed the murder. (Tr. 12/15/97, page 150, lines 18-20; page 159, lines 22-23) when she had done nothing of the sort. (Tr. 12/11/97, page 622, line 21; page 693, line 12). He argued to the jury that Fleming testified movant "always" carried "that gun" (Tr. 12/15/97, page 152, line 11), referring to the murder weapon. Fleming's testimony had actually been that she had only seen movant with a weapon on only two occasions (Tr. 12/11/97, page 643, lines 11-12) and only once within the the six months prior to the offense, and that was four days prior to the the shooting. (Tr. 12/11/97, page 648, lines 17-20). Further, what she had actually seen at that time was the handle of a weapon which she could not identitify. (Tr. 12/11/97, page 634, line 25; page 636, line 11; page 638, line 1; page 643, line 1). Moreover, as Kohl knew, there was no evidence to prove that the weapon Fleming saw was in fact the murder weapon, since that weapon was never recovered, and since there was not one shred of physical evidence linking Ford to the crime. (Tr. 12/9/97, page 130, lines 8-13; page 98, line 15; page 116, line 3).

Prosecutor Kohl endeavored to assail movant's character (in a case where movant did not take the stand and did not introduce any evidence to put his character in issue) and to inflame the jury's passions and prejudices, Prosecutor Kohl described movant to the jury

as, "evil" (Tr. 12/15/97, page 159, line 21), an "evil person" (Tr. 12/15/97, page 159, line 16), and "a worse [than evil] person." (Tr. 12/15/97, page 159, line 16).

Finally, the prosecutor sought to inflame the passions and prejudices of the jury and improperly divert them from their constitutional obligations with '[T]his man is guilty, your're not here to do him any favors. You're here to find him guilty." (Tr. 12/15/97, page 179, lines 5-6) Defense counsel's objection was overruled (Tr. 12/15/97, page 179, lines 7-8), whereupon the prosecutor continued with, "[y]ou're here to do justice.  And do justice for [the victim] Stephanie Gauze." (Tr. 12/15/97, page 179, lines 10-11.).  Upon conclusion of the prosecutor's rebuttal, the trial court, Judge Cushenberry, was sufficiently concerned about the impropriety of the argument that he sua sponte instructed the jury members that their responsibility was to return a verdict based on the evidence, then he took an immediate recess.  (Tr. 12/15/97, page 192, lines 1-10). Defense counsel moved for a mistrial, due to the prosecutorial misconduct during closing and rebuttal argument.  Counsel specified that his objections and motions related to prosecutor Kohl's mandate for the jury to do justice for the victim, Kohl's portrayal of movant as evil, and other grounds which he was not able to specify, due to having been cut off by the trial court.  (Tr. 12/15/97, page 192, lines 19-25; page 193, lines 1-6).  The Court noted that defense counsel had preserved all of these issues, including claims of misconduct on the "other grounds" for the record.  (Tr. 12/15/97, page 194, lines 2-5).

Further, the prosecutor argued in closing the prior bad act of movant, specifically carrying a weapon in the days or months preceding the shooting, as a means of demonstrating movant's propensity to commit the murder.  Under similar circumstances, Field v. United States, 396 A2d 522(D.C. 1978) held that a propensity argument constituted plain error, not curable by instruction, where the prosecutor argued the defendant's prior firearm conviction in a manner which suggested to the jury that he was the type of man who usually carried a gun, theoretically making it more likely that he was the shooter, rather that an innocent bystander.  In Field, the D.C. Court of Appeals reversed, citing United States v. Henry, 174 U.S. App. D.C. 88, 528 F. 2d 661(1976); and United States v. Carter, 157 U.S. App. D.C. 149, 482 F. 2d 738(1973).

The same principles noted in Henry, supra, and Carter, supra, are at play whether the prior offense was a prior conviction offered to impeach or a prior bad act offered as circumstantial proof of an element of the offense.  When a prosecutor crosses the line into an argument grounded in propensity, the result is the same.  The prejudice is so great that it cannot be cured.  Finally, the prosecutor exceeded the bounds of propriety in arguing, during rebuttal, that movant was guilty, that the jury wasn't there to do movant any favors, and that it was the job of the jury to convict movant.  The prosecutor continued with the improprieties by arguing that the jury **must convict movant, and in doing so, do justice for the victim.**  In United States v. Young, 470 U.S. 1(1985), the Supreme Court held that it was misconduct for a prosecutor to express his opinion that the

18.

defendant was guilty.  Moreover, in arguing for justice for the de-
cedent, the prosecutor placed himself in the victim's shoes and turn-
ed himself into the victim's personal representative.

> "A prosecutor may no more represent the victim in this
> fashion than he may urge the jurors to place  themsel-
> ves in the victim's shoes." <u>Clarke v. United  States</u>,
> 256 A2d 782,786-87(D.C. 1969); <u>See also</u>:  <u>Turner    v.</u>
> <u>United States</u>, 443 A2d 542,554(D.C. 1982);    <u>Villacres</u>
> <u>v. United Staes</u>, 357 A2d 423,426 n.3(D.C. 1976); <u>Sell-</u>
> <u>ars v. United States</u>, 401 A2d 974,977-78(D.C. 1978).

The prosecutor is forbidden from such emotional appeals for sympathy

for the victim of a crime. <u>Powell v. United States</u>, 455 A2d 405,410

(D.C. 1982)("we have and continue to condemn such emotional appeals"),

and cases cited therein.  In <u>Hawthorne v. United States</u>, 476 A2d 164

(D.C. 1984), the court noted that a prosecutor's inflammatory appeal

to a jury may constitute misconduct central to the issue of guilt

or innocence.  In both <u>Hawthorne</u>, <u>supra</u>, and the case at bar, the

improprieties swept not just through closing argument, but through

rebuttal as well, where "[i]mproper prosecutorial comments are looked

upon with special  disfavor...because at that point defense counsel

has no opportunity to contest or clarify what  the prosecutor has

said.  <u>Coreas v. United States</u> 565 A2d 594,605(quoting <u>Hall v. United</u>

<u>States</u>, 540 A2d 442,448(D.C. 1988)); citing <u>Powell</u>, <u>supra</u>, at 411).

In this case there was no motive or physical evidence linking

the movant to the crime.  The defense posited motive and opportunity

for the offense to have been committed by a third party, Tolbert,

who was a central figure in the group of relatives and friends offer-

ing themselves as witnesses for the government.  The fact that a prior jury deadlocked on the third day of deliberations indicates that the weight of the government's evidence was not overwhelming, although the prosecutor, erroneously, argued several times that it was "not a close case".  It also demonstrates that extent of prejudice brought about by the prosecutor's impermissible theatrics.  This is not a case where it can be said "with fair assurance after pondering all that has happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error."  Kotteakos v. United Staes, 328 U.S. 750,765, 90 L. Ed. 1157, 66 S. Ct. 1239(1946), accord, McGrier v. United States, 597 A2d 36, 41(D.C. 1991).  Wherefore, due to the above, movant's convictions should be reversed.  This Circuit has reversed in similar circumstance as in the case at bar.  See:  United Staes v. Watson, 171 F. 3d 695, 700(D.C. Cir. 1999)(prosecutor's misquotation of defense witness was reversible error because comments were directly contrary to evidence and other evidence of defendant's guilt was not overwhelming).

VII.   THE TRIAL COURT ERRED IN DENYING
THE D.C. CODE SECTION 23-110
MOTION WITHOUT A HEARING

The trial court should have ordered a hearing on the matter, to determine whether movant's claims under D.C. Code Sec. 23-110; were founded.  The statute itself establishes that a hearing should be had.

20.

"[U]nless the motions and files and records of the case con-
clusively show that the prisoner is entitled to no  relief,
the court shall cause notice thereof to be served upon  the
prosecuting authority, grant a prompt hearing thereon,  de-
termine the issues, and make findings of fact and  conclu-
sions of law with respect thereto." D.C. Code §23-110, (in
pertinent part).

In the past, the court has interpreted this to mean that when

ineffective assistance of counsel is alleged the presumption is that

a hearing should be held. <u>Bruce v. United States</u>, 617 A2d 986,995

(D.C. 1992); <u>Sykes v. United States</u>, 585 A2d 1335,1339(D.C.  1991).

Additionally, "any question regarding the appropriateness of a hear-

ing should be resolved in favor of holding a hearing." <u>Gillis v.</u>

<u>United States</u> 586 A2d 726,728(D.C. 1991)(per curiam), since §23-110

"is virtually a remedy of last resort" and "the record on direct

appeal is ordinarily barren of the evidentiary facts which would eit-

her confirm or refute [the] allegation [of ineffective assistance

of trial counsel]." <u>Miller v. United States</u>, 479 A2d 862,869-70(D.C.

1984)(internal quotation marks omitted).

A trial court's denial of a §23-110 motion without a hearing

must be reversed unless the claims (1) are "palpably incredible",

(2) are "vague and conclusary", or (3) even if true, do not entitle

the movant to relief. <u>Gregg v. United States</u>, 395 A2d 36,39(D.C.

1978). The Sixth Amendment right to counsel "attaches" at the filing

of formal criminal changes, and extends to all "critical stages" of

the proceedings. <u>Moran v. Burbine</u>, 475 U.S. 412(1986); <u>Michigan v.</u>

<u>Jackson</u>, 475 U.S. 625,629 n.3(1986); <u>Scott v. Illinois</u>, 440 U.S. 367

(1979); <u>Coleman v. Alabama</u>, 399 U.S. 1(1970); <u>Dew v. United States</u>,

558 A2d 1112,1113-18(D.C. 1989). Post-trial claims of ineffective-ness require that any question as to whether a hearing is needed should be resolved in favor of conducting a hearing. See: <u>Matthews v. United States</u>, 629 A2d 1185(D.C. 1993)(remanding for a hearing where defendant raised issue before trial but trial court failed to address it, and defendant again requested hearing after conviction pursuant to §23-110, based upon counsel's failure to interview two potential defense witnesses); <u>Hollis v. United States</u>, 623 A2d 1229 (D.C. 1993)(defendant entitled to hearing where counsel failed to interview and call codefendant who could provide exculpatory testi-mony); <u>Wright v. United States</u>, 608 A2d 763,765-66(D.C. 1992).

The trial court erred in denying the §23-110 motion without a hearing in order to properly consider matters alleged which were not a part of the record. Movant prays that this Honorable Court grant the relief sought herein and reverse movant's convictions, as the U.S. Constitution and the cited authorities mandate and in the interest of justice.

AUTHORIZED BY THE ACT OF JULY 7, 1955, AS AMENDED, TO ADMINISTER OATHS 18 U.S.C. 4004

Respectfully submitted,

Edward Ford, <u>pro se</u>
Reg. No. 11231-057
USP-Big Sandy
P.O. Box 2068
Inez, Kentucky 41224

Executed this _____ day of _____, 2007, at Inez, Ky, pursuant to 28 U.S.C. §1746.

Edward Ford, <u>pro se</u>
Reg. No. 11231-057

22.

## CERTIFICATE OF SERVICE

I, HEREBY CERTIFY that I served a copy of the foregoing on John R. Fisher, Esq., Asst. United States Attorney, 555 4th Street, N.W., Washington, D.C. 20001, by addressing an envelop as above, postage prepaid, and placing it in the legal mailbox of this prison, this _____ day of _____, 20C7.

Edward Ford, pro se
Reg. No. 11231-057

AUTHORIZED BY THE ACT OF JULY 7,
1955, AS AMENDED, TO ADMINISTER
OATHS  18 U.S.C. 4004

23.

*G*
*07-805*
*CKK*

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

EDWARD E. FORD

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE PR

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

HECTOR RIOS
WARDEN, USP

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TR
AT

Case: 1:07-cv-00805
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 5/2/2007
Description: HABEAS CORPUS

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government Plaintiff
□ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant
□ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### □ A. Antitrust
□ 410 Antitrust

### □ B. Personal Injury/ Malpractice
□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

### □ C. Administrative Agency Review
□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

### □ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## □ E. General Civil (Other) OR □ F. Pro Se General Civil

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

## V. ORIGIN

| ▮ 1 Original<br>Proceeding | ☐ 2 Removed<br>from State<br>Court | ☐ 3 Remanded from<br>Appellate Court | ☐ 4 Reinstated<br>or Reopened | ☐ 5 Transferred from<br>another district<br>(specify) | ☐ Multi district<br>Litigation | ☐ 7 Appeal to<br>District Judge<br>from Mag.<br>Judge |
|---|---|---|---|---|---|---|

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 2241 - Habeas Corpus -

**VII. REQUESTED IN
COMPLAINT**    CHECK IF THIS IS A CLASS
☐    ACTION UNDER F.R.C.P. 23      **DEMAND $**    Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES  ◉NO

**VIII. RELATED CASE(S)
IF ANY** ہٰٓیۡ ۚ F.    (See instruction)    ☐ YES  ◉ NO    If yes, please complete related case form.

**DATE**  5-2-07    **SIGNATURE OF ATTORNEY OF RECORD**  ریۡ ۚۡ C۔)

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.       COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.      CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.      CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.     RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd